## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

ERIC E. BERNARD (#R-25398),
        Plaintiff,

v.

ILLINOIS DEPT. OF CORRECTIONS, ET AL.,
        Defendants.

Case No. 3:25-cv-50364

Judge Iain Johnston
Mag. Judge Margaret J. Schneider

## PLAINTIFF'S MOTION FOR AN ORDER REQUIRING HIS DEPOSITION TO BE TAKEN VIA VIDEOCONFERENCE

Plaintiff Eric E. Bernard respectfully moves the Court under Rules 26(c) and 30(b)(4) of the Federal Rules of Civil Procedure for an order requiring that his deposition be taken remotely. While Plaintiff has proceeded with depositions in accordance with the parties' understanding that all fact depositions would be taken by videoconference for the convenience of all parties, the IDOC Defendants have suddenly insisted on an in-person deposition of Plaintiff. Requiring Plaintiff to submit to an in-person deposition would be oppressive and overly burdensome given his medical conditions and required care, which make transportation to any suitably sized conference room exceedingly difficult. The burden on Plaintiff far outweighs any prejudice to Defendants, who have deposed Plaintiff by videoconference in every other case pending before this Court. Indeed, every other deposition in this case has proceeded via videoconference. For the reasons discussed in further detail below, good cause exists to order that Plaintiff's deposition be taken by videoconference.

In accordance with Federal Rule of Civil Procedure 26(c), Manuel A. Franco, Rocco J. Screnci, John Dewar, and Thomas Kunnasery (counsel for Plaintiff), met and conferred with Dylan

J. Barnick and Thomas Pietryla (counsel for IDOC) on September 19, 2025, at approximately 2:00 p.m. CST on this matter remotely via videoconference.

## I.     BACKGROUND

### a)  Plaintiff's Medical Condition

Plaintiff is suing IDOC, several of its employees, and Wexford Health Sources, Inc. for the conditions he was subjected to while at outside medical facilities following a stroke-like incident he suffered in March 2019. To this day, Plaintiff suffers from severe medical issues that limit his ability to walk, sit up on his own, or even sit in a wheelchair. *See* ECF No. 207, ¶ 11. His only means of movement is by a "geri" chair, also known as a geriatric chair or medical recliner. *See id*. He also requires full-time care because he cannot walk, sit-up, bathe himself or use the bathroom without assistance. *See* Ex. A at 13 (application for release under Joe Coleman Medical Release Act, exhibits excluded).  And aside from suffering from multiple mental illnesses, Plaintiff's medical conditions impact his ability to focus for extended periods of time.  In addition, due to his medical conditions, Plaintiff requires transport by ambulance.  *See* Memorandum Opinion and Order at 2, *Bernard v. Illinois Department of Corrections et al*, Case No. 3:20-cv-50412, ECF No. 157 at 2 (J. Johnston) (noting that Plaintiff had medical appointments canceled when an ambulance was unavailable to transport him); *see also* Ex. A at 13 (quoting that IDOC was ordered to ensure that Plaintiff had access to toileting during transport); *see also* Ex. B at 47:6-8, 112:14-17 (Transcript of 9/5/2025 Dep. of Pl., *Bernard v. Jefferys et al*, Case No. 25-cv-50365) (detailing occasions ambulances were used to transport Plaintiff).

Plaintiff's medical conditions led to his release from IDOC custody under the Joe Coleman Medical Relief Act. *See* Ex. C (10/25/24 letter from Prisoner Review Board to Molly Blaase granting Medical Release).  That Act authorizes the early release of inmates who suffer from

2

terminal illness or, as relevant here, who are or will become "medically incapacitated" after sentencing. 730 Ill. Comp. Stat. Ann. 5/3-3-14(b). For purposes of the Act, "medically incapacitated" refers to a person who has "*severe*, *permanent* medical or cognitive disability . . . or [medical condition] that incapacitates the petitioner to the extent that institutional confinement does not offer additional restrictions, and that the condition is unlikely to improve noticeably in the future." *Id.* at 5/3-3-14(a) (emphasis added). IDOC knows all this. Indeed, under the Act, IDOC had to provide the Prison Review Board with a medical evaluation of Plaintiff that included, among other things, "a statement confirming or denying" that he was eligible for release because of his medical incapacity. *Id.* at 5/3-3-14(c)(4)(ii). IDOC's failure to produce documents relating to its involvement in Mr. Bernard's medical release is the subject of Plaintiff's August 28, 2025 Motion to Compel, which is currently pending before this Court. Given Mr. Bernard's medical release, that Plaintiff is medically incapacitated is simply not in reasonable dispute.

### b) IDOC Defendants' Demand for an In-Person Deposition

The parties have taken several depositions in this matter and in Plaintiff's other cases pending before the Court. Each of these depositions proceeded remotely via videoconference. For the first time, two weeks before Plaintiff's deposition was set to take place, counsel for the IDOC Defendants notified Plaintiff's counsel that he intended to depose Plaintiff in person, thus departing from the remote deposition protocol established throughout this case and others between Plaintiff, Wexford, and IDOC. *See* Ex. D at 7 (email exchange between Dylan J. Barnick, Manuel A. Franco, Thomas Pietryla, and Rocco J. Screnci).

IDOC's first stated reason for demanding an in-person deposition was that the IDOC's counsel "need[s] to meet [Plaintiff] in person and observe him" and "the extent of his physical maladies," proclaiming that Plaintiff's "physical condition is perhaps the most important fact in

this lawsuit." *See* Ex. D at 5. IDOC later attempted to walk back its initial reasoning, arguing instead that they sought an in-person deposition because Plaintiff struggled reading documents on the screen and became dizzy during his recent deposition in Case No. 25-cv-50365 (formerly 20-cv-5383). This led to his deposition being continued to a second day. Lastly, IDOC stated that an in-person deposition would allow the deposing attorneys to evaluate Plaintiff's demeanor, facial reactions, expressions, and comportment first-hand.

In response, Plaintiff's counsel acknowledged Plaintiff's struggles during his previous deposition and offered to accommodate IDOC's concerns by agreeing to print hard copies of any exhibits. Plaintiff's counsel also explained that they have personally experienced Plaintiff's limited endurance through in-person interactions on several occasions and frequently limits the time of in-person interactions with Plaintiff. Such episodes are not due solely to reading documents on the screen and will occur during longer examinations whether or not a screen is used. And so, to address these concerns, Plaintiff's counsel has offered to allow Plaintiff's deposition to take place for shortened periods over multiple days, if needed. Lastly, Plaintiff's counsel noted that a video deposition already provides the opportunity to gauge Plaintiff's demeanor, reactions, and expressions. When the Parties met and conferred on this dispute, Plaintiff's counsel asked IDOC's counsel how else Plaintiff could accommodate concerns about his remote deposition. But the IDOC Defendants offered no compromise and again insisted on deposing Plaintiff in person.

II.      ARGUMENT

      a) **Legal Standard**

Federal Rule of Civil Procedure 26(c) provides that this Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed.R.Civ.P. 26(c). The Court has "'broad discretion to decide when a protective order

4

is appropriate and what degree of protection is required.'" *Learning Resources, Inc. v. Playgo Toys Enterprises Ltd.*, 335 F.R.D. 536, 537 (N.D. Ill. 2020) (quoting *Shockey v. Huhtamaki*, 280 F.R.D. 598, 600 (D. Kan. 2012)). Likewise, Federal Rule of Civil Procedure 30(b)(4) authorizes the Court to order that a deposition "be taken by telephone or other remote means." Fed.R.Civ.P. 30(b)(4). When exercising its discretion, the Court "must balance claims of prejudice and those of hardship and conduct a careful weighing of the relevant facts." *Learning Resources, Inc.*, 335 F.R.D at 537 (citations and quotations omitted). That said, courts have "encouraged remote depositions as the technology for taking depositions in that way has improved significantly over time." *In re Broiler Chicken Antitrust Litig.*, 2020 WL 3469166, at *5 & n.5 (N.D. Ill. June 25, 2020).

b) **Good cause exists to conduct Plaintiff's deposition remotely, and any prejudice to Defendants is easily remedied through less intrusive means**

Due to the difficulty in transporting Mr. Bernard and the need for a Hoyer lift to allow for toileting, the reality is that the only place where Plaintiff could conceivably sit for an in-person deposition would be in a conference room at the housing complex at which Plaintiff resides. However, during Plaintiff's most recent video deposition for Case No. 25-cv-50365 (formerly 20-cv-5383), the conference room could barely accommodate Plaintiff and two attorneys. As a practical matter, the room cannot accommodate attorneys for all the relevant parties, let alone a stenographer with his or her equipment. Recall that Plaintiff is confined to a "geri" chain, leaving him in a horizontal position that takes up much more space than a person sitting upright. And physical constraints aside, forcing Plaintiff to sit for an in-person deposition in such close quarters with attorneys representing the very parties against whom Plaintiff has filed claims for cruel and unusual punishment and whom Plaintiff believes are responsive for his current medical incapacitation, could trigger his PTSD and/or anxiety, causing him to panic and raise his blood

5

pressure to levels that may necessitate an emergency room visit. *Cf. Heitkoetter v. Domm*, No. 1:22-CV-0368-KES-BAM, 2024 WL 4608356, at *4 (E.D. Cal. Oct. 29, 2024) (considering the anxiety caused by an in-person deposition when allowing a remote deposition); *see also See* Ex. B at 60:19-61:11 (Plaintiff is currently taking 5 different blood pressure medications, as well as PTSD and seizure medications). That intrusion is unwelcome and simply unnecessary for several reasons.

To start, the IDOC Defendant's first stated purpose for an in-person deposition—so counsel can personally "observe" Plaintiff and the "the extent of his physical maladies"—makes no sense. Counsel cannot act as a witness in this case. *See* Illinois Professional Conduct Rule 3.7. Counsel's personal opinions about Plaintiff's physical condition simply do not matter, particularly given the production of Plaintiff's medical records in this case, and the fact that Plaintiff's medical incapacitation resulted in his medical release under the Joe Coleman Act. *See* Ex. C (voting 3-0 to grant Plaintiff medical release). Even if Plaintiff's medical condition were reasonably in dispute, the proper avenue for examining Plaintiff would be to follow the procedures in Federal Rule of Civil Procedure 35, not to rely on IDOC's counsel's untrained personal observations of Plaintiff. *See* Fed. R. Civ. P. 35(a)(1) (permitting "physical or mental examination by a suitably licensed or certified examiner."); *accord Newman v. San Joaquin Delta Community College Dist.*, 272 F.R.D. 505, 511 (E.D. Cal. 2011) (explaining "whether someone is 'suitably licensed or certified' is a function of whether the individual has the requisite level of expertise to conduct the proposed exam."). Indeed, the only conceivable reason for counsel's request at this stage of the proceedings is to have an excuse to gawk at Plaintiff's medical condition and/or to harass Plaintiff. *Cf. Jansen v. Packaging Corp. of Am.*, 158 F.R.D. 409, 411 (N.D. Ill. 1994) (agreeing that the presence of counsel at medical examination under Rule 35 would "inject a greater degree of the adversary

6

process into an evaluation that is to be neutral"). But stopping that sort of needless embarrassment and annoyance is precisely why the Court should issue a protective order. *See* Fed. R. Civ. P. 26(e).

IDOC's other stated desires for an in-person deposition, though less insidious, are still no more meritorious.[1] First, nobody disputes the value of seeing a witness' expressions and reactions during examination. But there is no reason that an in-person deposition is needed to make those observations. Indeed, "many courts have determined that remote video depositions provide sufficient opportunity to evaluate a deponent's nonverbal responses, demeanor, and overall credibility." *See Pursley v. City of Rockford*, 2020 WL 6149578, at *2 (N.D. Ill. Oct. 20, 2020); *see also Learning Resources, Inc.*, 335 F.R.D. at 539 (collecting cases). Indeed, IDOC has not agreed to allow in-person depositions of any of its able-bodied witnesses, whose non-verbal responses, demeanor, and overall credibility have been evaluated by Plaintiff by videoconference in accordance with the parties' agreement. *See Kerr Mach. Co. v. Li Gear, Inc.*, No. 19 CV 6942, 2022 WL 2982456, at *2 (N.D. Ill. July 28, 2022) (finding that a party's argument on the necessity of an in-person deposition was weakened to the extent they sought remote depositions for their own witnesses).

Second, Plaintiff's sensitivity to light is not limited to viewing documents on a computer monitor but also extends to looking at pages with white backgrounds over extended periods of time. Plaintiff has offered to conduct the deposition over multiple days to ameliorate both IDOC's concerns of Plaintiff's difficulties with longer examinations and the physical and mental burden

---

[1] IDOC has also recently cited Plaintiff's presence at trial as a reason that supports an in-person deposition. Def.'s Mot. Compel at 4, ECF No. 211. But the opposite is true. Plaintiff has limited resources and is going to great lengths to attend his trial in Case No. 1:18-cv-01333-SLD (*Bernard v. Hart et al.*). Forcing Plaintiff to devote more energy and more resources to attend an in-person deposition serves no legitimate purpose when a remote deposition is feasible and imposes a minimal burden—if any—on the IDOC Defendants.

on Plaintiff. Plaintiff has gone out of his way to offer potential solutions to IDOC's stated concerns. But the mere inability of counsel to observe a witness in person is simply insufficient prejudice to defeat the propriety of a remote deposition here. *See Grupo Petrotemex, S.A. de C.V. v. Polymetrix AG*, No. 16-CV-2401 (SRN/HB), 2020 WL 4218804, at *3 (D. Minn. July 23, 2020) ("[i]f the lack of being physically present with the witness were enough prejudice to defeat the holding of a remote deposition, then Rule 30(b)(4) would be rendered meaningless").

## III.  CONCLUSION

For these reasons, the Court should issue an order requiring that Plaintiff's deposition be taken remotely.

Date: <u>September 23, 2025</u>                                          Respectfully submitted,


                                                                        */s/ Sharon A. Hwang*
                                                                        Sharon A. Hwang (#6217211)
                                                                        Rocco J. Screnci (#6344037)
                                                                        Manuel A. Franco (#6349090)
                                                                        MCANDREWS HELD AND MALLOY, LTD.
                                                                        500 W. Madison St., 34th Floor
                                                                        Chicago, IL 60661
                                                                        (312) 775-8000
                                                                        shwang@mcandrews-ip.com
                                                                        rscrenci@mcandrews-ip.com
                                                                        mfranco@mcandrews-ip.com

                                                                        *Attorneys for Plaintiff*
                                                                        Eric E. Bernard

**CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2025, the foregoing is being served on all counsel of record via the Court's CM/ECF system.

Kwame Raoul
Attorney General of Illinois

Thomas Pietryla
Dylan Barnick
Assistant Attorney General
115 S. LaSalle St., 28th Floor
Chicago, IL 60603
(312) 405-9428
thomas.pietryla@ilag.gov
dylan.barnick@ilag.gov

*Attorneys for Defendants*
Illinois Department of Corrections, et al.


Joseph J. Lombardo
Matthew H. Weller
Cassiday Schade, LLP
222 W. Adams St., Suite 2900
Chicago, IL 60606
(312) 739-3253
jlombardo@cassiday.com
mweller@cassiday.com

*Attorneys for Defendant*
Wexford Health Sources Inc.


/s/ Violet Tovar
Violet Tovar
Paralegal

9